Receipt # 061381

ORIGINAL

ECF

DOWNEY BRAND LLP
MATTHEW G. JACOBS (CA Bar No. 122066)
NICOLE E. GRANQUIST (CA Bar No. 199017)
555 Capitol Mall, Tenth Floor
Sacramento, CA 95814-4686
Telephone: (916) 444-1000
Facsimile: (916) 444-2100

REMY, THOMAS, MOOSE & MANLEY LLP
TINA A. THOMAS (CA Bar No. 88796)
TIFFANY K. WRIGHT (CA Bar No. 210060)
455 Capitol Mall, Suite 210
Sacramento, CA 95814
Telephone: (916) 443-2745
Facsimile: (916) 443-9017

Attorneys for Plaintiff
AKT DEVELOPMENT CORPORATION

FILED
SEP 14 2004
U.S. COURT OF FEDERAL CLAIMS

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| AKT DEVELOPMENT CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA; THE CHIEF OF ENGINEERS AND COMMANDER, UNITED STATES ARMY CORPS OF ENGINEERS and THE CHIEF OF ENGINEERS AND COMMANDER'S DELEGEES; THE SECRETARY OF THE DEPARTMENT OF THE INTERIOR and THE SECRETARY'S DELEGEES; and SACRAMENTO VALLEY OPEN SPACE CONSERVANCY,<br><br>Defendants. | 04-1453C<br>Case No.:<br><br>**COMPLAINT** |

Plaintiff AKT DEVELOPMENT CORPORATION alleges as follows:



ORIGINAL

## JURISDICTION AND VENUE

1. This action involves claims arising from an agreement entered into by and between Plaintiff AKT Development Corporation ("AKT") and Defendants U.S. Army Corps of Engineers, Sacramento District ("USACE") and United States Fish and Wildlife Service, Sacramento Fish and Wildlife Office ("USFWS"). Plaintiff seeks money damages far in excess of $10,000 and rescission of the agreement. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1491.

2. The United States has waived its sovereign immunity pursuant to 28 U.S.C. § 1491.

3. Venue in this Court is proper under 28 U.S.C. §1491, since 28 U.S.C. § 1491 confers exclusive jurisdiction on this Court to hear claims against the United States based on any express or implied-in-fact contract with the United States. In this case, Defendants are agencies of the United States and the action states claims for damages based on an agreement by and between AKT, USACE and USFWS.

## THE PARTIES

4. Plaintiff AKT is a corporation organized under the laws of California. Its principal place of business is in Sacramento, California.

5. Defendants United States, the Chief of Engineers and Commander, United States Army Corps of Engineers, the Chief of Engineers and Commander's delegees, including the USACE, are responsible for, among other things, administering and issuing permits for activities affecting wetlands pursuant to Section 10 of the Rivers and Harbors Act of 1899 (33 U.S.C. § 403) and Section 404 of the Federal Water Pollution Control Act ("Clean Water Act") (33 U.S.C. § 1344).

6. Defendants United States, the Secretary of the Department of the Interior, and the Secretary's delegees, including USFWS, are responsible for, among other things, implementing the federal Endangered Species Act ("ESA"). The USFWS is named herein as an intended third party beneficiary to the agreement in dispute.

7. Defendant Sacramento Valley Open Space Conservancy ("Conservancy") is a private, non-profit land trust. The Conservancy creates dedicated open space through various

means, including conservation easements. The Conservancy is named herein as an intended third party beneficiary to the agreement in dispute.

## GENERAL ALLEGATIONS

### Regulatory Duties of Federal Agency Parties to This Action

8. Under Section 404 of the Clean Water Act, 33 U.S.C. § 1344, USACE, by delegation, exercises authority over the discharge of dredged or fill material in navigable waters and wetlands of the United States. USACE issues general and individual permits in connection with approved dredging on and filling of wetlands, usually in connection with construction projects of some sort. General permits, also called "Nationwide Permits," are exemptions for certain categories of activity that USACE has predetermined will have only minimal effects on regulated areas. 33 C.F.R. § 323.2(n). Individual permits must be obtained in all other cases and are issued on a case-by-case basis. 33 C.F.R. § 323.2(m).

9. When USACE's issuance of a permit may jeopardize the continued existence of any endangered or threatened species or result in the destruction or adverse modification of such species' critical habitat, the USACE must, pursuant to Section 7 of the ESA, "consult" with USFWS before issuing a permit. 16 U.S.C. § 1536(a)(2).

10. USACE's consultation with USFWS may either be "informal" or "formal." Under the informal consultation process, USACE asks USFWS to identify any listed or proposed endangered or threatened species that may exist in the area of proposed activity. 16 U.S.C. § 1536(c). If USFWS asserts that such species exist, USACE and USFWS prepare what is known as a "Biological Assessment" to more fully identify any such species. *Id.* If the Biological Assessment indicates that the proposed activity may, in fact, affect endangered or threatened species or their critical habitats, USACE must initiate "formal" consultation with the USFWS.

11. Under the formal consultation process, USFWS may issue a "Biological Opinion" that, among other things, assesses in detail the effect of the proposed activity on any endangered or threatened species identified in the Biological Assessment. The Biological Opinion may also identify and recommend reasonable mitigation and enhancement measures, including live propagation, transplantation, and habitat acquisition and improvement, that would minimize the

adverse effects of the proposed activity upon the endangered species, threatened species, or critical habitat concerned. 16 U.S.C. § 1536(h)(1)(B).

12. USACE may then incorporate the mitigation and enhancement measures recommended by USFWS into a Clean Water Act Section 404 permit (either nationwide or individual). The inclusion of such enforceable, special conditions ensures that the activities authorized by the permit do not violate the Endangered Species Act.

**The Silver Springs Development Project**

13. During the late 1980s, a development project known as Calvine 1100, located in Sacramento County, California was subdivided, from which the Silver Springs residential development project emerged. The Silver Springs development project originally consisted of two parcels, the Silver Springs and Silver Springs East residential developments, purchased by AKT on January 13, 1989 for approximately $3,181,450.89. The parcel allocated to the Silver Springs East residential development is also known as "Lot P." Lot P consists of approximately 86.5 acres and is currently owned by AKT.

14. On or about September 14, 1990, USACE issued AKT a nationwide permit (the "1990 NWP") to fill 5.28 acres of wetlands for the Silver Springs residential development. As mitigation for the fill of vernal pools on the site, USACE required AKT to create 15.7 acres of marsh and riparian woodland habitat, a 6-acre vernal pool complex, and an oak woodland buffer around the vernal pool area. AKT constructed the required habitat and woodland buffer, which are contained in a separate parcel. Importantly, Lot P was not part of, nor mitigation for, the Silver Springs residential development.

15. Due to unfavorable economic conditions in the early 1990's, construction for the Silver Springs residential development project did not begin immediately. As a result of the subsequent expiration of the 1990 NWP, and the divestiture of the Silver Springs property by AKT in 1994, a new nationwide permit was issued in 1994 for the Silver Springs residential development (the "1994 NWP").

16. AKT expected the terms of the 1994 NWP to be substantially similar, if not exactly the same, as the 1990 NWP. However, without warning, the USACE redefined the residential

development project area to include Lot P, and expanded the 1994 NWP to include several new special conditions as mitigation and enhancement measures for the Silver Springs residential development. Specifically, Special Condition No. 2 required that Lot P (identified in the 1994 NWP as the "vernal pool complex immediately east of the development boundary") be maintained as a wetland preserve and wildlife habitat in perpetuity. Additionally, Special Condition 5(a) required the "establishment of the long-term funding mechanism intended to provide for maintenance and monitoring of the preservation and mitigation areas" and Special Condition 5(b) required the "recordation of deed restrictions maintaining the preservation and mitigation areas as wetland preserve and wildlife habitat in perpetuity." Finally, Special Condition No. 6 required a buffer of 50 feet around the "preserve and mitigation areas."

17. These new Special Conditions came as a surprise to AKT, given the following: (1) AKT's repeated representations to USACE, USFWS, and other, local agencies that AKT intended to fully develop Lot P in the future, (2) AKT's repeated representations -- and the prior understanding amongst the agencies -- that Lot P would be "preserved" only on a temporary basis as an "avoidance area" during the construction of the Silver Springs residential development, and (3) the complete absence of any request by USACE and/or USFWS for any additional mitigation or enhancement measures to offset any potential or existing impacts of the Silver Springs residential development.

18. On or about September 19, 1994, the vernal pool fairy shrimp and vernal pool tadpole shrimp were federally recognized as threatened and endangered species, respectively.

19. In May 1997, J&L Properties purchased the Silver Springs residential development parcel from AKT (but not Lot P), and commenced construction in August 1997 in accordance with the 1994 NWP.

20. On or about September 4, 1997, USACE issued a cease-and-desist order to J&L Properties, halting construction at the Silver Springs residential development. The cease-and-desist order indicated that construction crews had graded some portion of the fifty-foot buffer required by the 1994 NWP and had clipped some portion of a wetland on Lot P. Because the inadvertent intrusion may have affected the newly-listed threatened or endangered species, USACE indicated

that it would initiate formal consultation under Section 7 of the ESA with USFWS. During this time, construction work was allowed to continue on the Silver Springs residential development in areas south and west of Silver Springs' boundary with Lot P. However, J&L Properties and AKT risked massive financial repercussions if the remainder of the Silver Springs residential development did not proceed as planned.

**The Lot P Declaration of Restrictions**

21. During the formal Section 7 consultation process, between September and December 1997, AKT held several meetings with staff from USACE and USFWS. In one of those meetings, on or about September 26, 1997, USACE staff renewed its demand that AKT record a deed restriction on Lot P, designating the property as a preserve "in perpetuity." In a subsequent letter, USACE extended the time to record the deed restriction on Lot P to November 5, 1997.

22. On or about October 29, 1997, AKT informed USACE and USFWS that it would accede to their demand to place a deed restriction on Lot P, but only if the restriction specified Lot P as "an avoidance area" and that "if at such time as the property is appropriately permitted and mitigated for, it can develop." This language comported with AKT's continued insistence and understanding that Lot P was not meant to serve as mitigation for impacts from the Silver Springs residential development, and could be developed in the future.

23. On or about December 8, 1997, USFWS issued the final Biological Opinion for the Silver Springs residential project. The Biological Opinion, expressly incorporated into the 1994 NWP by USACE, purported to condition any further construction and completion of J&L Properties' Silver Springs residential development on AKT's recording of a deed restriction on Lot P, and further required AKT to eventually replace the deed restriction with a USFWS-approved conservation easement "in perpetuity."

24. Obviously, AKT considered the Biological Opinion utterly unsatisfactory, since the additional mitigation measures were neither reasonably connected nor roughly proportional to the impacts resulting from the Silver Springs residential development. The Biological Opinion also purported to require additional mitigation for impacts caused by previously approved and previously mitigated project activities at Silver Springs.

25. With construction at Silver Springs on hold over this issue, AKT, USACE, and USFWS conferred several times between December 1997 and April 1998. Throughout the discussions, AKT reiterated its concern that Lot P was never supposed to be considered mitigation for the Silver Springs residential development, given that mitigation had already been amply provided when the project was initially approved. Nonetheless, in order to minimize the devastating financial damages from the extended work stoppage and to ensure that J&L Properties would not lose the spring/summer 1998 construction season, AKT reluctantly agreed to compromise its position and place a modified deed restriction on Lot P.

26. While prohibiting construction activity on Lot P *temporarily*, the April 21, 1998 deed restriction, called a "Declaration of Restrictions," explicitly envisioned the eventual development of that parcel. It reads, in pertinent part:

> 3. Condition to and Termination of This Declaration
>
> Declarant [AKT], for himself and successors in interest, expressly reserves the right to apply for any permits, permissions, or approvals under the Clean Water Act, the Endangered Species Act, and/or any other applicable federal, state or local laws, to the extent that such permits, permissions or approvals are required by the applicable laws of all agencies having jurisdiction over the Avoided Area [Lot P], including but not necessarily limited to the Army Corps of Engineers, the Environmental Protection Agency and the U.S. Fish and Wildlife Service, for the use or development of the Avoided Area in manners inconsistent with this Declaration at any time in the future. This is so despite the use of the phrase "in perpetuity" in the recital, supra.
>
> Provided, however, that this Declaration shall remain in full force and effect, and no development, use, action, or omission inconsistent herewith shall occur with respect to the entire said Avoided Area and any part thereof, unless and until all such necessary permits, approvals, or permissions are granted by all agencies having jurisdiction over the Avoided Area and all conditions thereof (including, but not limited to, mitigation conditions) are complied with; but if such are obtained and complied with, this Declaration shall then automatically terminate and be of no further force or effect, and the said Avoided Area ... shall be free and clear of this Declaration without notice or further action by any party, and grantor or grantor's successors may use the property in any way permitted by law.

27. With this deed restriction recorded against Lot P (and not objected to by USACE), on or about May 6, 1998, USACE lifted its cease-and-desist order, permitting J&L Properties and AKT to recommence construction of the Silver Springs residential development pursuant to the 1994 NWP.

28. A short time later, AKT initiated discussion with USACE and USFWS regarding development of Lot P.

**The Agreement At Issue and the Resulting Conservation Easement**

29. Although AKT, USACE and USFWS continued to disagree about the extent of permissible development on Lot P, in June 1999, USFWS proposed a solution. In exchange for AKT's purchase of a nearby parcel that was far more ecologically rich and sensitive than Lot P, and AKT's agreement to record a conservation easement against the new parcel in perpetuity, USACE and USFWS would permit development of Lot P, and would credit the ecological attributes (*e.g.*, its wetlands, vernal pools, etc.) of the new parcel against any required mitigation for the impacts of AKT's development of Lot P. In other words, AKT would be forever rid of the government's (erroneous) assertion that Lot P could not be developed. In exchange, the government would obtain open space in perpetuity at a far more ecologically sensitive, and larger, site. AKT agreed to explore and identify such potential sites.

30. Accordingly, on or about July 13, 1999, AKT submitted for USACE's and USFWS's consideration a parcel known as "Excelsior 184." Excelsior 184 is a contiguous 184-acre parcel in Sacramento County, approximately 3.5 acres north of Lot P. It contains 16.16 acres of Laguna (old terrace) formation vernal pools and 20.33 acres of wetlands.

31. In July and August 1999, AKT, USACE, and USFWS met several times to discuss this proposal, and all parties eventually agreed to it, and to using the Excelsior 184 parcel as mitigation for any impacts on endangered species or their habitats from development of Lot P, during a meeting on or about August 26, 1999. Put in process-appropriate terms, the agreement was that in exchange for AKT's purchase of Excelsior 184 and its agreement to record a conservation easement against it in perpetuity, USACE and USFWS would abandon their claim that Lot P was supposed to be preserved as open space in perpetuity, and would process AKT's

application pursuant to Section 404 of the Clean Water Act for a permit to fill wetlands on Lot P. USFWS further agreed that in the ensuing consultation under Section 7 of the ESA, USFWS would issue a Biological Opinion recommending that the attributes of Excelsior 184 be credited as appropriate mitigation for any impacts of AKT's development of Lot P. USACE would then incorporate those findings and conditions into a Section 404 permit for AKT's development of Lot P.

32. In accordance with this agreement, AKT purchased the Excelsior 184 parcel for $1,236,000.00.

33. On or about October 6, 1999, USACE re-initiated formal consultation under Section 7 of the ESA for the Silver Springs and Lot P residential development in response to AKT's request for a revised Biological Opinion in light of the agreement described above.

34. On or about October 8, 1999, USFWS informed AKT that it was prepared to issue a revised Biological Opinion for the Silver Springs and Lot P development upon AKT's fulfilling its commitment to acquire the Excelsior 184 parcel and its recordation of a conservation easement against it.

35. As agreed, AKT recorded the conservation easement against Excelsior 184 on October 12, 1999. The terms of the easement recite that the easement's purpose is to provide mitigation for any impacts described in the soon to be issued Biological Opinion for the Silver Springs and Lot P residential developments.

36. Pursuant to California Civil Code sections 805 and 815.3 (allowing only tax-exempt nonprofit organizations and government entities to acquire and hold conservation easements), and in accordance with the agreement by and between AKT, USACE, and USFWS, the conservation easement names the Conservancy as Grantee, and expressly grants USACE and USFWS the right to, among other things, oversee AKT and the Conservancy's conservation and protection of the Excelsior 184 property, and to enforce the terms and conditions of the conservation easement.

**USFWS's Adherence to the Terms of the Agreement**

37. Thereafter, on or about October 13, 1999, USFWS issued its revised Biological Opinion. Unfortunately, the revised Biological Opinion did not accurately represent the parties'

August 1999 agreement. Specifically, the revised Biological Opinion stated that "the proposal would protect a site known as Excelsior 184 in perpetuity, as an alternative to perpetual protection of Lot P, to offset effects of Silver Springs residential development on listed species" and that "this biological opinion only addresses the current phase (J&L Properties portion) of the Silver Springs residential development and impacts on the adjoining Lot P." In essence, the revised Biological Opinion addressed only the impacts *to Lot P* of the *existing* Silver Springs residential development, and did not credit the ecological attributes of the Excelsior 184 parcel against the impacts of AKT's proposed development of Lot P.

38. For this reason, AKT, USACE, and USFWS engaged in prolonged discussions regarding the terms of the agreement entered into in August 1999 and the resulting revised Biological Opinion. During these discussions, USACE suddenly and inexplicably grasped onto the position that could be inferred (erroneously) from the revised Biological Opinion, *i.e.*, that the preservation of the Excelsior 184 parcel, a parcel twice as large and much more ecologically important than Lot P, served only to mitigate the impacts *to Lot P* of the *existing* Silver Springs residential development, and would not be credited against any impacts from the proposed development of Lot P. In essence, USACE asserted that AKT had to preserve *both* Lot P and Excelsior 184 as open space in perpetuity.

39. By contrast to USACE, USFWS acknowledged that it had issued the revised Biological Opinion in error, and that it did not comply with the parties' agreement. USFWS also advised AKT that it would attempt to clear up USACE's "confusion" with respect to the preservation of Lot P as open space in perpetuity.

40. In keeping with its acknowledgement of error, USFWS again revised its Biological Opinion, this time to accurately reflect the parties' agreement. Its November 19, 2002 revised Biological Opinion supported the use of the Excelsior 184 parcel as mitigation for the impacts of AKT's development of Lot P, and further found, pursuant to the April 21, 1998 Declaration of Restrictions, that Lot P was not intended to be protected in perpetuity. Unfortunately, USACE has refused to retreat from its new-found position that Excelsior 184 does not mitigate for the impacts of development on Lot P.

**USACE's Failure to Adhere to the Terms of the Agreement**

41. Notwithstanding USFWS's November 19, 2002 revised Biological Opoinion supporting the use of the Excelsior 184 parcel as mitigation for residential development on Lot P and finding that Lot P was not intended to be protected in perpetuity, on or about August 25, 2003, USACE denied AKT's application for an individual Section 404 Clean Water Act permit for residential development of Lot P. Demonstrating its repudiation of the August 1999 agreement, USACE stated in its decision document that Lot P was "to be set aside as a preserve in perpetuity by special condition of AKT's May 1994 verification under Nationwide Permit number 26 for the construction of the Silver Springs residential development." It also stated that development of Lot P was not the "least environmentally damaging alternative" and that the project "would result in unacceptable impacts to important vernal pools that are to be preserved."

42. AKT filed an administrative appeal of the denial of AKT's application for an individual Section 404 Clean Water Act permit. On May 4, 2004, USACE issued an administrative appeal decision affirming the denial of AKT's application for an individual Section 404 Clean Water Act permit. In its administrative appeal decision (which is not the subject of judicial challenge here), USACE again repudiated the existence of the 1999 agreement.

43. By failing to acknowledge in the Section 404 individual permitting process the agreed upon use of the Excelsior 184 parcel as mitigation for residential development of Lot P, by expressly finding, in denying AKT's application for a Section 404 Clean Water individual permit, that Lot P was to be preserved as open space in perpetuity, and by subsequently renouncing in its administrative appeal decision the existence of any agreement on the subject, USACE has presently and/or anticipatorily breached its obligations under the agreement.

44. By reason of USACE's breach described above, AKT has suffered compensatory and incidental damages far in excess of $10,000, the precise sum to be proven at trial. As a direct and proximate cause of USACE's breach, AKT has been unable to sell, develop, or otherwise use either Lot P or the Excelsior 184 parcel. During this time, AKT has also been required to pay property taxes on the Excelsior 184 parcel. Additionally, because AKT is unable to sell, develop, or otherwise use either Lot P or the Excelsior 184 parcel, AKT has lost revenue in an amount to be

proven at trial. AKT has also suffered other compensatory and incidental damages in a sum to be proven at trial.

45. If AKT is required to maintain the conservation easement on the Excelsior 184 parcel without performance by USACE of its obligations under the agreement, AKT will continue to suffer damages beyond the date of any money judgment ordered by this Court.

46. As a result of Defendant USACE's conduct as set forth above, AKT has also been compelled to retain legal counsel to prosecute this action and has incurred and will continue to incur attorneys' fees and costs.

**CLAIM FOR RELIEF**
**28 U.S.C. § 1491**

47. Paragraphs 1 through 46 above are incorporated by this reference as though fully set forth herein.

48. By failing to acknowledge in the Section 404 individual permitting process the agreed upon use of the Excelsior 184 parcel as mitigation for residential development of Lot P, by expressly finding, in denying AKT's application for a Section 404 Clean Water individual permit, that Lot P was to be preserved as open space in perpetuity, and by subsequently renouncing in its administrative appeal decision the existence of any agreement on the subject, USACE has presently and/or anticipatorily breached its obligations under the agreement.

49. AKT has performed all condition, covenants, and obligations required of it under the agreement.

50. USACE's breach of the agreement has damaged AKT in a manner and in sums to be proven at trial, but far in excess of $10,000.

**PRAYER**

WHEREFORE, Plaintiff AKT prays that judgment be entered as follows:

1. For compensatory and incidental damages according to proof at trial in excess of $10,000;

2. For an order rescinding the August 1999 agreement and rescinding the conservation easement on the Excelsior 184 property;

3. For costs of suit and reasonable attorneys' fees; and

4. For such other and further relief as the Court deems proper.

Dated: September 10, 2004

DOWNEY BRAND LLP

By: ______________________
MATTHEW G. JACOBS
Attorneys for Plaintiff AKT CORPORATION

#408155